IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-555

No. COA21-378

Filed 16 August 2022

Pitt County, No. 20CVS2164

FREEDOM MORRIS, Plaintiff,

v.

DAVID RODEBERG, M.D., individually and in his individual capacity, and PITT COUNTY MEMORIAL HOSPITAL, INCORPORATED d/b/a VIDANT MEDICAL CENTER, Defendants.

Appeal by defendants from order entered 16 March 2021 by Judge J. Carlton Cole in Pitt County Superior Court. Heard in the Court of Appeals 8 February 2022.

*Cranfill Sumner LLP, by Steven A. Bader and Colleen N. Shea, for defendant-appellant Pitt County Memorial Hospital Incorporated, et al.*

*Ellis & Winters LLP, by Alex J. Hagan, Michelle A. Liguori, and Robert L. Barry, for defendant-appellant David Rodeberg, M.D.*

*Oxendine Barnes & Associates PLLC, by Ryan D. Oxendine, James A. Barnes, IV, and Spencer S. Fritts, for plaintiff-appellee.*

*Roberts & Stevens, PA, by David C. Hawisher, for Amicus Curiae North Carolina Association of Defense Attorneys.*

GORE, Judge.

Plaintiff Freedom Morris initiated this medical malpractice action against Dr. Rodeberg and Vidant Hospital (collectively, "defendants"). Defendants filed Motions to Dismiss plaintiff's Complaint as time-barred under N.C. Gen. Stat. § 1-17(c). The

trial court entered a written order denying defendants' motions, and defendants appealed. Upon review, we reverse.

## I.    Factual and Procedural Background

On 23 February 2015, plaintiff presented to the Emergency Department at Vidant Medical Center with complaints of right-sided abdominal pain. Plaintiff was evaluated by the pediatric surgery team, and an abdominal ultrasound confirmed acute appendicitis. Plaintiff was a thirteen-year-old minor at the time, and his mother was present with him.

The following day, on 24 February 2015, plaintiff underwent a laparoscopic appendectomy—a minimally invasive surgery to remove the appendix through several small incisions, rather than one large incision. Dr. Rodeberg, the chief of pediatric surgery at Vidant Hospital, performed the surgery.

Plaintiff alleges that Dr. Rodeberg negligently performed the appendectomy by failing to remove the entire appendix and properly irrigate the operative site. After the initial surgery, plaintiff developed an infection and underwent two additional surgeries. Plaintiff was released from the hospital on 20 March 2015.

On 14 September 2020, plaintiff filed the instant lawsuit against defendants, alleging medical malpractice claims arising from defendants' care and treatment of plaintiff's appendicitis. Plaintiff alleged that Dr. Rodeberg breached the standard of care in performing the appendectomy, and that Vidant Hospital was negligent and

vicariously liable for Dr. Rodeberg's conduct.

¶ 6   In his Complaint, plaintiff specifically alleged, "The statute of limitations has not expired prior to the filing of this civil action; more specifically, this action is being brought prior to the one year statute of limitations provided by N.C.G.S. § 1-17(b), as [plaintiff] was a minor until November 28, 2019."  On 12 and 16 November 2020, defendants filed Motions to Dismiss under Rule 12(b)(6), alleging N.C. Gen. Stat. § 1-17(c) applied, and the statute of limitations on plaintiff's claim ran three years after plaintiff's surgery while he was still a minor.

¶ 7   In response to defendants' Motions to Dismiss, plaintiff submitted a brief for the trial court's consideration, arguing that:

> 1.  The statute of limitations for Plaintiff's causes of action had not run by the filing of Plaintiff's Complaint because Plaintiff's Complaint was filed prior to him turning nineteen years of age and thus was timely under N.C. Gen. Stat. § 1-17(b); and
>
> 2.  Defendants' strained interpretation of Subsection 1-17(c) would violate the Equal Protection Clause of the United States and North Carolina Constitutions as applied to Plaintiff.

¶ 8   On 15 February 2021, Superior Court Judge J. Carlton Cole heard defendants' Motions to Dismiss.  At the outset of the hearing, counsel for defendants noted the parties agreed that plaintiff's action accrued in February 2015, when the appendectomy was performed.  Counsel for defendants argued that, based on the

February 2015 accrual date, plaintiff's age of thirteen at the time of accrual, and the fact that the Complaint was filed in September of 2020—more than five years later— the complaint should be dismissed pursuant to the plain language of sections 1-17(c) and 1-15(c), which provided a three-year statute of limitations.

¶ 9        Plaintiff argued subsection (c) of § 1-17 did not apply to medical malpractice actions involving minors over the age of ten at the time of accrual of the action. Instead, subsection (b) of § 1-17 applied.  Plaintiff also contended, if subsection (c) applied, it was unconstitutional as applied to plaintiff.  Specifically, he argued defendants' statutory interpretation violated his Equal Protection rights because it treated minors differently, based on whether they were under or over the age of ten at the time of accrual of the action.

¶ 10        Defendants contended plaintiff's constitutional argument was a facial challenge to subsection (c) of § 1-17.  Further, defendants asserted this argument was not properly before the trial court because it was not raised in plaintiff's Complaint, and because only a three-judge panel of the Superior Court of Wake County could determine that a North Carolina statute is unconstitutional.

¶ 11        On 15 March 2021, the trial court entered an Order denying defendants' Motions to Dismiss.  The Order did not specify on which grounds the trial court based its ruling, stating only that defendants brought their Motions "under N.C. Gen. Stat. §§ 1-15(c), 1-17(c), and 1-52."  The trial court did not rule on plaintiff's constitutional

argument. Fifteen days later, on 31 March 2021, Judge Cole retired from the bench. On 5 April 2021, defendants filed their Joint Notice of Appeal to this Court from Judge Cole's Order Denying Defendants' Motions to Dismiss entered 16 March 2021.

## II. Appellate Jurisdiction

¶ 12 "Orders denying motions to dismiss based upon the statute of limitations are interlocutory and not immediately appealable." *Nello L. Teer Co. v. N.C. DOT*, 175 N.C. App. 705, 711, 625 S.E.2d 135, 139 (2006). However, there are at least two routes by which a party may obtain immediate review of an interlocutory order or judgment. First, if the order or judgment is final as to some but not all the claims or parties, and the trial court certifies there is no reason for delay. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2021). Second, an interlocutory order can be immediately appealed under §§ 1-277(a) and 7A-27(b)(3)(a) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review. §§ 1-277(a), 7A-27(b)(3)(a) (2021).

¶ 13 Here, defendants assert the trial court's Order affects a substantial right because Judge Cole retired shortly after denying their motions to dismiss, thereby depriving them of an opportunity to bring a motion for reconsideration. Defendants cite generally to our well-established rule "that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the

judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972) (citation omitted).

¶ 14        While not explicitly argued by either party, it is unclear why N.C. R. Civ. P. 63 does not afford relief to an aggrieved party under these circumstances. "This Court has interpreted the language of Rule 63 to statutorily authorize a substitute judge to reconsider an order entered by a judge who has since retired." *Springs v. City of Charlotte*, 222 N.C. App. 132, 135, 730 S.E.2d 803, 805 (2012) (citations omitted). Additionally, fifteen days passed from entry of the trial court's Order and Judge Cole's retirement. For more than two weeks, defendants did not seek reconsideration of that Order under N.C. R. Civ. P. 54(b). After Judge Cole had retired, defendants did not seek reconsideration by another trial judge pursuant to N.C. R. Civ. P. 63. Regardless, it is unnecessary to determine whether the trial court's Order is appealable as a matter of right pursuant to §§ 1-277(a) and 7A-27(b)(3)(a), and we make no such holding here, since we elect to assert jurisdiction over this matter on other grounds. *See Hill v. StubHub, Inc.*, 219 N.C. App. 227, 232, 727 S.E.2d 550, 554 (2012).

¶ 15        Defendants also filed a petition for writ of *certiorari* pursuant to N.C.R. App. P. 21 asking this Court to permit review in the event we determine that the trial court's Order is not immediately appealable. This Court may issue a writ of *certiorari*

in "appropriate circumstances" to permit review of a trial court's order "when no right of appeal from an interlocutory order exists." N.C.R. App. P. 21(a). For the writ to issue, the petitioner has the burden of showing "merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted). Defendants argue there are three reasons the writ should issue: (1) the trial court's denial of their Motions to Dismiss presents a pure question of law that is fully developed for this Court's review; (2) the trial court's failure to apply the three-year statute of limitations in § 1-17(c) was clearly erroneous; and (3) they have no avenue for seeking reconsideration in the trial division.

¶ 16     It is true that the mere fact that an interlocutory appeal could resolve the litigation is not enough to justify a grant of *certiorari*. *See Newcomb v. Cnty. of Carteret*, 207 N.C. App. 527, 553, 701 S.E.2d 325, 344 (2010). However, when interlocutory review of a dispositive question of law would be more efficient than deferring the issue until final judgment at the trial level, review by *certiorari* is appropriate. This Court has previously granted our writ of *certiorari* to review purely legal questions in cases where we have determined that "the administration of justice will best be served by granting defendants' petition." *Reid v. Cole*, 187 N.C. App. 261, 264, 652 S.E.2d 718, 720 (2007) (citation omitted); *see also Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 872 (1983) (affirming this Court's grant of *certiorari* to review the denial of a motion for summary judgment where "[t]he issue

is strictly a legal one and its resolution is not dependent on further factual development . . . [and] the issue of the applicability and interpretation of th[e] statute is squarely presented . . . ."); *Valentine v. Solosko*, 270 N.C. App. 812, 814-15, 842 S.E.2d 621, 624 (2020) (granting *certiorari* to review the trial court's denial of a motion to dismiss where judicial economy would be best served by reviewing the interlocutory order); *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 691, 698 S.E.2d 719, 722 (2010) (granting *certiorari* to review the trial court's denial of a motion for summary judgment brought on an outcome determinative choice of law issue).

¶ 17      In the case *sub judice*, defendants have demonstrated interlocutory review would promote the interest of public policy by preventing unnecessary delay in the administration of justice. Accordingly, in the exercise of our discretion, we issue our writ of *certiorari* and review defendants' appeal on the merits.

## III.      Statute of Limitations

¶ 18      A trial court's interpretation of a statute of limitations is an issue of law that is reviewed de novo on appeal. *Goetz v. N.C. Dep't of Health & Human Servs.*, 203 N.C. App. 421, 425, 692 S.E.2d 395, 398 (2010).

¶ 19      The parties dispute whether subsection (b) or subsection (c) of § 1-17 applies to this medical malpractice action filed by a minor. Plaintiff contends subsection (b) controls and argues his claim is not time-barred because he filed suit prior to turning

nineteen years of age. Plaintiff further contends subsection (c) only applies to minors under the age of ten years old.

¶ 20    Defendants assert the statute of limitations as a complete bar to plaintiff's claim. Defendants argue the plain language of subsection (c) provides a three-year limitations period for accrual of a medical malpractice claim for a minor over the age of ten. We conclude that § 1-17(c) controls, and plaintiff's suit is untimely.

¶ 21    Section 1-17 has three relevant subsections. Subsection (a) is the general tolling provision, which allows a person who is under a disability at the time the cause of action accrued to file suit within three years after the disability is removed. A person under the age of 18 years is under a disability for the purpose of this section. § 1-17(a)(1).

¶ 22    Subsection (b) applies to professional malpractice actions if the plaintiff is a minor. The text of § 1-17(b), provided in full:

> Notwithstanding the provisions of subsection (a) of this section, and *except as otherwise provided in subsection (c) of this section*, an action on behalf of a minor for malpractice arising out of the performance of or failure to perform *professional services* shall be commenced within the limitations of time specified in G.S. 1-15(c), except that if those time limitations expire before the minor attains the full age of 19 years, the action may be brought before the minor attains the full age of 19 years.

§ 1-17(b) (emphasis added).

¶ 23    Subsection (c) is narrower and apples to medical malpractice actions. The

plain language of § 1-17(c) provides, in pertinent part:

> *Notwithstanding the provisions of subsection (a) and (b) of this section*, an action on behalf of a minor for injuries alleged to have resulted from malpractice arising out of a *health care provider's performance* of or failure to perform professional services shall be commenced within the limitations of time specified in G.S. 1-15(c), except as follows:
>
>> (1) If the time limitations specified in G.S. 1-15(c) expire before the minor attains the full age of 10 years, the action may be brought any time before the minor attains the full age of 10 years.
>
> . . . .

§ 1-17(c)(1) (emphasis added).[1] Under subsection (c), a plaintiff who is older than age seven when his medical malpractice cause of action accrued does not receive any extension to the statute of limitations.

"The cardinal principle of statutory construction is that the intent of the legislature is controlling." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (quotation marks and citation omitted).

> Just as a more specific statute will prevail over a general one, a specific provision of a statute ordinarily will prevail over a more general provision in that same statute. Moreover, just as it "is true *a fortiori*" that a specific statute prevails over a general one "when the special act is later in point of time," the later addition of a specific provision to a pre-existing more general statute indicates the General Assembly's most recent intent.

---

[1] Subsections (c)(2) and (c)(3) are omitted as they are not applicable in this case.

*LexisNexis Risk Data Mgmt. v. N.C. Admin. Office of the Courts*, 368 N.C. 180, 187, 775 S.E.2d 651, 656 (2015) (internal citations omitted).

¶ 25        In *King v. Albemarle Hosp. Auth.*, our Supreme Court was tasked with interpreting and applying § 1-17(b), prior to the addition of subsection (c).  370 N.C. 467, 470-71, 809 S.E.2d 847, 849 (2018).  The Court observed that, "Section 1-17(b) . . . reduces the standard three-year statute of limitations, after a plaintiff reaches the age of majority, to one year by requiring a filing before the age of nineteen."  *Id.* at 471, 809 S.E.2d at 850.  The Court elaborated upon the General Assembly's amendment to this section in 2011, which "reduce[d] the minor's age from nineteen to ten years . . . *thus further narrowing the time period for a minor to pursue a medical malpractice claim.*"  *Id.* at 471 n.2, 809 S.E.2d at 850 n.2 (emphasis added).  This specific footnote on the application of § 1-17(c) was not necessary to the decision and is therefore nonbinding *dicta.*  Nonetheless, this commentary by our Supreme Court is a relevant guideline for our instant task of interpreting the application of subsection (c) to medical malpractice cases brought by a minor.

¶ 26        Subsection (c) is a narrower and later addition to the statute.  It applies to a subset of claims to which §  1-17(b) also applies, specifically medical malpractice as opposed to a more general professional malpractice.  It provides that, despite the provisions in subsections (a) and (b), in a medical malpractice action on behalf of a minor, the usual § 1-15(c) statute of limitations applies.  Except, if the statute of

limitations expires before the minor turns ten years old, then it is extended until the minor's tenth birthday. Under § 1-15(c), the statute of limitations for a medical malpractice action is three years (plus an additional year under the latent discovery rule). § 1-15(c).

¶ 27 Subsection 1-17(c) controls the applicable statute of limitations in this case. Plaintiff was over the age of ten at the time of accrual of his claim. Thus, the three-year statute of limitations that ordinarily governs medical malpractice actions applies. Plaintiff's lawsuit is untimely because his medical malpractice action accrued when he was thirteen years old, and he filed suit five years later.

## IV. As-Applied Constitutional Challenge

¶ 28 In the alternative, plaintiff raises an as-applied constitutional challenge to § 1-17(c). He argues § 1-17(c), as-applied, violates the Equal Protection Clause of both the United States and North Carolina Constitutions because it does not pass strict scrutiny review.

¶ 29 Assuming, without deciding, that plaintiff's constitutional challenge to § 1-17(c) was properly before the trial court and preserved for appellate review, his argument lacks merit.

¶ 30 "Strict scrutiny applies only when a regulation classifies persons on the basis of certain suspect characteristics or infringes the ability of some persons to exercise a *fundamental* right." *DOT v. Rowe*, 353 N.C. 671, 676, 549 S.E.2d 203, 208 (2001)

(citation omitted) (emphasis added). Plaintiff asserts subsection 1-17(c) runs counter to the "fundamental" right provided by Article I, Section 18 of the North Carolina Constitution. That article provides that "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18.

¶ 31     Plaintiff contends subsection (c) creates a separate class of medical-malpractice plaintiffs over the age of ten but less than fifteen years who—unless appointed a guardian ad litem, adjudicated abused or neglected juveniles, or placed in the custody of the State—are subject to a three-year statute of limitations and thus will always be barred from bringing their claims upon reaching the age of majority.

¶ 32     However, plaintiff acknowledges § 1-17(c) is a statute of limitation; it does not bar his suit. "Statutes of limitation represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual." *G. D. Searle & Co. v. Cohn*, 455 U.S. 404, 408, 71 L. Ed. 2d 250, 256 (1982) (*purgandum*). "Persons with malpractice claims are not a suspect class and a classification so as to shorten the statute of limitations as to them does not affect a fundamental interest. This classification is not inherently suspect." *Hohn v. Slate*, 48 N.C. App. 624, 626, 269 S.E.2d 307, 308 (1980) (citation omitted).

¶ 33   Thus, statutes of limitation do not affect a fundamental right and are not subject to strict scrutiny analysis. Intermediate scrutiny attaches to other classifications, including gender and illegitimacy. *Rowe*, 353 N.C. at 675, 549 S.E.2d at 207. All other classifications, including age-based discrimination, receive rational-basis scrutiny. *Id.* Under rational-basis review, "the party challenging the regulation must show that it bears no rational relationship to any legitimate government interest." *Id.*

¶ 34   In *Hohn*, this Court heard a similar equal protection challenge to an earlier version of § 1-17, wherein the plaintiff argued § 1-17(b) "create[d] an arbitrary class and there is no rational basis for this distinction." 48 N.C. App. at 626, 269 S.E.2d at 308. We flatly rejected that argument. *Id.*

¶ 35   In this case, plaintiff offers no argument and cites no authority to demonstrate that § 1-17(c) does not pass rational-basis review. Accordingly, his as-applied constitutional challenge is without merit.

## V.   Conclusion

¶ 36   For the foregoing reasons, the trial court erred by denying defendants' Motions to Dismiss the Complaint as time-barred under § 1-17(c). We reverse.


REVERSED.

Judge WOOD concurs.

Judge HAMPSON dissents by separate opinion.

HAMPSON, Judge, dissenting.

At the outset, I completely agree with the majority that this appeal is interlocutory and does not impact any substantial right of Defendants that would be lost absent immediate appeal. I would, however, also deny the Petition for Writ of Certiorari in the exercise of judicial restraint; thereby allowing the litigation to proceed apace and obviating the need for this Court to wade into a question of first impression involving novel statutory interpretation and to reach—in the first instance—a constitutional question we might otherwise judiciously avoid at this stage or, potentially, altogether in this litigation. All the trial court did here was deny Defendants' pre-answer Motions to Dismiss. The trial court's Order does not finally rule on the application of the Statute of Limitations nor does it finally rule on the constitutionality of Section 1–17(c) as applied to Plaintiff in this case. Nevertheless, the majority of this panel voted in favor of allowing the Petition, and reaches the merits of this case. On those merits, I respectfully dissent from the Opinion of the Court.

I.

The majority's thoughtful and concise statutory analysis here focuses narrowly on the language of N.C. Gen. Stat. § 1–17(c). However, in a manner consistent with our prior precedent, the proper approach is to read Section 1–17(c) *in pari materia* with Section 1–15(c) and then, in turn, Sections 1–17(a) and (b). *Cf. Osborne by Williams v. Annie Penn Mem'l Hosp., Inc.*, 95 N.C. App. 96, 101, 381 S.E.2d 794, 797

(1989) ("In the case at bar, we are called upon to interpret the language of G.S. 1–17(b), and to determine its applicability to the statute of limitations covering malpractice actions as set forth in G.S. 1–15(c). The very language of G.S. 1–17(b) requires that these two statutes be construed *in pari materia*.").

¶ 39       Indeed, as in *Osborne*, the very language of N.C. Gen. Stat. § 1–17(c) requires these statutes to be read together:

> Notwithstanding the provisions of subsection (a) and (b) of this section, an action on behalf of a minor for injuries alleged to have resulted from malpractice arising out of a health care provider's performance of or failure to perform professional services *shall be commenced within the limitations of time specified in G.S. 1–15(c)*, except as follows:
>
> (1)       If the time limitations specified in G.S. 1–15(c) expire before the minor attains the full age of 10 years, the action may be brought any time before the minor attains the full age of 10 years.
>
> (2)       If the time limitations in G.S. 1–15(c) have expired and before a minor reaches the full age of 18 years a court has entered judgment or consent order under the provisions of Chapter 7B of the General Statutes finding that said minor is an abused or neglected juvenile as defined in G.S. 7B–101, the medical malpractice action shall be commenced within three years from the date of such judgment or consent order, or before the minor attains the full age of 10 years, whichever is later.
>
> (3)       If the time limitations in G.S. 1–15(c) have expired and a minor is in legal custody of the State, a county, or an approved child placing agency as defined in G.S. 131D–10.2, the medical malpractice action shall be commenced within one year after the minor is no longer in such legal custody, or before the minor attains the full age of 10 years, whichever is later.

N.C. Gen. Stat. § 1–17(c) (2021) (emphasis added).

¶ 40      By its own plain terms, Section 1-15(c) provides:

> *Except where otherwise provided by statute*, a cause of action for
> malpractice arising out of the performance of or failure to perform
> professional services shall be deemed to accrue at the time of the
> occurrence of the last act of the defendant giving rise to the cause
> of action: Provided that whenever there is bodily injury to the
> person, economic or monetary loss, or a defect in or damage to
> property which originates under circumstances making the
> injury, loss, defect or damage not readily apparent to the claimant
> at the time of its origin, and the injury, loss, defect or damage is
> discovered or should reasonably be discovered by the claimant
> two or more years after the occurrence of the last act of the
> defendant giving rise to the cause of action, suit must be
> commenced within one year from the date discovery is made:
> Provided nothing herein shall be construed to reduce the statute
> of limitation in any such case below three years. Provided further,
> that in no event shall an action be commenced more than four
> years from the last act of the defendant giving rise to the cause of
> action: Provided further, that where damages are sought by
> reason of a foreign object, which has no therapeutic or diagnostic
> purpose or effect, having been left in the body, a person seeking
> damages for malpractice may commence an action therefor within
> one year after discovery thereof as hereinabove provided, but in
> no event may the action be commenced more than 10 years from
> the last act of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1–15(c) (2021) (emphasis added).  If Section 1–15(c) is to be faithfully

applied, it must be applied as a whole—not merely in piecemeal—in order to

effectuate the intent of the General Assembly.  As such, any and every application of

Section 1–15(c) by its very terms requires a determination of whether another

statutory exception applies.

¶ 41     Section 1–17 is, of course, a statutory exception to Section 1–15(c). *See* N.C. Gen. Stat. § 1–17 (2021). *King v. Albemarle Hosp. Auth.*, 370 N.C. 467, 470, 809 S.E.2d 847, 849 (2018) ("Section 1–17 tolls certain statutes of limitation periods while a plaintiff is under a legal disability, such as minority, that impairs her ability to bring a claim in a timely fashion."). The *King* Court examined the interplay of these statutes as applicable to that case.

¶ 42     "[U]nder subsection 1–17(a), a minor plaintiff who continues under the disability of minority, upon reaching the age of eighteen, has a three-year statute of limitations to bring a claim based on a general tort." *Id.* at 471, 809 S.E.2d at 849-50 (citing N.C. Gen. Stat. § 1–17(a)(1)). "Whereas the tolling provision of subsection (a) focuses on general torts, the tolling provision of subsection (b) specifically addresses professional negligence claims, including medical malpractice. As with general torts, when a medical malpractice claim accrues while a plaintiff is a minor, N.C.G.S. § 1–17(b) tolls the standard three-year statute of limitations provided by N.C.G.S. § 1–15(c)." *Id.* at 471, 809 S.E.2d at 850 (citation omitted).

¶ 43     "Section 1–17(b), however, reduces the standard three-year statute of limitations, after a plaintiff reaches the age of majority, to one year by requiring a filing before the age of nineteen." *Id.* "Thus, a minor plaintiff who continues under that status until age eighteen has one year to file her claim." *Id.* The Court explained: "The language of 'Notwithstanding the provisions of subsection (a)' refers

to this reduced time period to bring an action. Like subsection (a), subsection (b) still allows the minor to reach adulthood before requiring her to pursue her medical malpractice claim, assuming her disability is otherwise uninterrupted." *Id.* at 471–72, 809 S.E.2d at 850 (citations omitted).

¶ 44        In this case, it then follows that Section 1–17(c) is itself an exception to the general rule applicable to minors injured by professional negligence set forth in Section 1–17(b). Indeed, Section 1–17(b), as amended, makes this express. N.C. Gen. Stat. § 1–17(b) ("Notwithstanding the provisions of subsection (a) of this section, *and except as otherwise provided in subsection (c) of this section* . . . ." (emphasis added)). As such, Section 1–17(b) remains generally applicable unless one of the exceptions under Section 1–17(c) applies. As in Section 1–17(b), the language in Section 1–17(c) of "Notwithstanding the provisions of subsection (a) and (b) of this section" references the reduced time period to bring an action in the three instances to which subsection (c) is applicable.

¶ 45        Relevant to this case, is the first instance in which 1–17(c) applies:

> an action on behalf of a minor for injuries alleged to have resulted from malpractice arising out of a health care provider's performance of or failure to perform professional services shall be commenced within the limitations of time specified in G.S. 1–15(c), except as follows:
>
> (1) If the time limitations specified in G.S. 1–15(c) expire before the minor attains the full age of 10 years, the action may be brought any time before the minor attains the full age of 10 years.

N.C. Gen. Stat. § 1–17(c)(1). By its terms, and using language similar to Section 1–17(b), Section 1–17(c)(1) provides that (A) in medical malpractice cases involving a minor Section 1–15(c) remains generally applicable, except when (B) the general statute of limitations under Section 1–15(c) would begin to run before the minor attains the age of seven, in which case the expiration of the statute of limitations is delayed until the minor attains the age of ten.

¶ 46    Thus, Section 1–17(c)(1) targets only those very young children who are injured by alleged medical negligence requiring them to bring suit by age ten. Other minor plaintiffs remain governed by the terms of Section 1–15(c). With respect to those other minor plaintiffs not governed by 1–17(c)(1), Section 1–15(c), in general provides, for a three-year statute of limitations running from the accrual of the claim "Except where otherwise provided by statute . . .." Section 1–17(b) remains such a statutory exception. Reading Sections 1–15(c) and 1–17(b) and (c) *in pari materia*—as we must—if the narrow statutory exceptions found in 1–17(c) to Section 1–15(c) do not apply to a minor plaintiff, then Section 1-17(b) applies where the statute of limitations would otherwise expire and provides "a minor plaintiff who continues under that status until age eighteen has one year to file her claim." *King*, 370 N.C. at 471, 809 S.E.2d at 850. Thus, read together, these statutes operate to provide a minor injured by alleged medical negligence until the age of nineteen to bring suit,

unless the action accrues before the minor turns seven, in which case, the minor has until age ten to bring suit.

¶ 47      This analysis is consistent with the purpose of statutes of limitation and the interplay with the tolling provisions of Section 1–17 articulated by our Supreme Court. "The purpose of a statute of limitations is to afford security against stale demands, not to deprive anyone of his just rights by lapse of time." *King,* 370 N.C. at 470, 809 S.E.2d at 849 (citations omitted). However:

> [b]alanced against the disadvantage of stale claims as protected by the statute of limitations is the problem that individuals under certain disabilities are unable to appreciate the nature of potential legal claims and take the appropriate action. Section 1– 17 tolls certain statutes of limitation periods while a plaintiff is under a legal disability, such as minority, that impairs her ability to bring a claim in a timely fashion.

*Id.*

¶ 48      Reading Section 1–17(c)(1) as depriving child victims—without the aid of a Guardian ad litem—of alleged medical negligence of any tolling provision beyond the age of ten for filing a claim for damages personal to them results in untenable result of forcing minors to have to bring lawsuits when they remain legally "unable to appreciate the nature of potential legal claims" and unable to "take the appropriate action" impairing their ability to bring a timely claim. *See id.* On the other hand, reading Section 1–17(c)(1) in conjunction with 1–17(b) preserves the statutory protections of minors by tolling the statute of limitations but carves out a limited

exception for claims involving alleged malpractice when a child is very young. It could be supposed that this would balance the need to preserve the rights of minors against forcing medical professionals to defend against stale claims. For example, prior to Section 1–17(c), an infant injured at birth would arguably have had almost twenty years to bring a lawsuit for personal claims arising from alleged medical negligence. One can imagine the difficulty of defending such a claim after the passage of so many years, "for '[w]ith the passage of time, memories fade or fail altogether, witnesses die or move away, [and] evidence is lost or destroyed." *King,* 370 N.C. at 470, 809 S.E.2d at 849. Such concerns are lessened when the minor is thirteen, fourteen, or fifteen. As such, a common-sense plain reading of these statutes reflects a legislative intent to preserve the tolling provisions for minors but to limit the tolling for claims occurring when the minor is very young to balance against stale claims and loss of evidence prejudicing medical defendants.[2]

¶ 49     Applying this proper interpretation of the statutes to the facts of this case is a

---

[2] Although not directly at issue in this case, this same interpretation applies to the other two instances found in Section 1–17(c)(2) and (3). Notably, unlike subsection (c)(1) both of these subsections apply when the "time of limitations have expired". Subsection (c)(2) operates to extend the tolling provisions for up to three years after entry of an abuse or neglect adjudication even if the statute of limitations has otherwise expired. Subsection (c)(3) extends the tolling provisions while a minor is in custody of the State, County DSS, or other approved child placement agency and provides an additional year to file suit after such custody is relinquished. By its terms, subsection (c)(3) would also seem to require a minor injured by medical malpractice to file suit at the very latest by the time they reach 19, consistent with Section 1–17(b).

simple exercise. Defendants contend this action accrued when Plaintiff was thirteen years old. On its face, because the statute of limitations did not expire before Plaintiff turned ten, Section 1–17(c)(1) does not apply. Instead, Section 1–15(c) read *in pari materia* with Section 1–17(b) applies to Plaintiff's professional malpractice claim. As such, Plaintiff was required to bring this lawsuit before reaching age nineteen. The Complaint in this case alleges Plaintiff brought this action prior to attaining the age of nineteen. Thus, Plaintiff's Complaint on its face does not reflect the statute of limitations had expired creating a bar to Plaintiff's claim. Therefore, the Complaint states a claim upon which relief might be granted. Consequently, the trial court did not err in denying Defendants' Motions to Dismiss. Accordingly, the trial court's Order should be affirmed.

## II.

¶ 50        Even if the interpretation and application of Section 1–17(b) and (c) *in pari materia* with Section 1–15(c) set forth in Part I of this dissent is not correct and the majority's interpretation holds, the correct result is still to affirm the trial court's interlocutory Order denying Defendants' Motions to Dismiss. This is so because Plaintiff has raised, in the alternative, the colorable argument if Section 1–17(c) did operate to require Plaintiff to bring suit as a sixteen year old, while still under a legal disability and legally unable to do so, that as applied to Plaintiff, such an application of the statute would violate his federal and state constitutional right to equal

protection of the laws including by depriving him of the fundamental right under the North Carolina Constitution that: "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. Art. I, Sec. 18.

¶ 51        Again, the trial court's Order is not a final determination of whether Section 1–17(c) is unconstitutional as applied to Plaintiff.  It merely allowed the litigation to proceed.  This litigation would include permitting the parties to develop the factual and legal bases supporting or opposing Plaintiff's as-applied challenge to the extent it even needed to be reached.  At this preliminary 12(b)(6) stage, reaching the merits of Plaintiff's as-applied challenge prior to the development of the facts applicable to Plaintiff's claim is inappropriate.  Indeed, in the absence of those facts, the majority embarks on what is effectively a facial constitutional analysis without any analysis of how the statute applies to Plaintiff.  This facial analysis is also improper in the absence of a facial challenge to the statute first considered by a three-judge panel of the Superior Court.  The trial court, here, properly denied Defendants' Motions to Dismiss and should be affirmed.